Carr, J.
Two judgments at law having been obtained by different persons against Gross, were transferred, one to Claiborne, and the other to Wimbish; and they filed separate bills against Gross, to set aside, as fraudulent, a deed made by him conveying his land to his daughters. After these bills had been separately ‘ answered, and had been depending for some time, the chancellor ordered, that they be united and proceeded in as one cause. Knowing that these consolidation orders were sometimes made in the courts of common law, it did not strike me to inquire whether they were proper in chancery also, until my attention was turned *339 to the question by my brother Brooke, and some cases referred to. On examining these, I find the attempt to introduce such a practice into the court of chancery in England, has been discouraged. And as this is the first time the question has come before us, it may not be amiss to quote a passage from the latest case I find in the english books, in which the vice chancellor reviews the different eases on the subject. It is the case of the Warden and Fellows of Manchester College v. Isherwood, decided in 1829. 2 Sim. 476. 2 Cond. Eng. Ca. in Ch. 506. where the vice chancellor says—“ The general rule is, that every plaintiff1 shall be at liberty to conduct each suit that he institutes, in what way he thinks best. At lav/ there is one exception; in the case of policies of assurance : and the question is, whether in courts of equity any such exception has been allowed ? In the case of Pyke v. Brock, 3 Gwiil. 1345. in the year 1791, a motion was made to consolidate seven tithe suits. In that case, chief baron Eyre speaks of the practice as if it were common; but the reason assigned for making the order was, that no cause was shewn. In Keighly v. Brown, 16 Ves. 344. in 1809, a motion was made, before answer, to consolidate tithe suits. Lord Eldon is represented as stating his opinion, that the court of exchequer did very freely consolidate cases of this description ; but it appears that he mentioned the point to baron Thompson, who had no idea that the order was of course in the court of exchequer, though sometimes made under special circumstances ; and lord Eldon refused to make any order. In 1819, in the case of Forman v. Blake, 7 Price 654. a motion was made, after answer, to consolidate tithe causes. The chief baron Richards said— I never heard of an order, in the course of my experience, for consolidating causes in equity, nor can I conceive upon what principle It can be done. There are many reasons why it should not; and if it be the practice, it is extraordinary.’ And upon refer *340 ring to the registrar, he said there was a case wherein 7 “ . a similar application had been made, about twenty-four years ago, in about 1795, when the court refused the application. In 1820, in Forman v. Southwood, 8 Price 572. a motion was made to consolidate tithe suits, be-f°re answer Tand that was refused; and it is stated, (see page 575.) that a similar application had been made in the case of Davies v. Mosely, in May of the same year, and refused with costs. These are all the cases in print. But in a manuscript case of Kynaston v. Perry, before lord Eldon in February and March 1826, a motion was made to consolidate tithe suits, before answer, and refused. It is evident, therefore, that neither in this court, nor the court of exchequer, has the practice prevailed, of compelling the plaintiff to consolidate, his different suits against several defendants : and the present motion, being a mere experiment in opposition to practice, must be refused with costs.” In the record before us, the cases seem to have been united on the motion of the plaintiff in the first cause. I think we must still consider them as distinct causes: and as that of Wimbish v. Gross is below the jurisdiction of this court, the appeal as to that must be dismissed; but, under the circumstances, without costs, the appellant being led to believe-by the’ order of court, in which he seems to have had no agency, that his cause formed part of the other.
With respect to the case of Claiborne, I think the decree dismissing his bill must be reversed. I take much pleasure in saying that the argument for the appellees was such as would have done credit to much older counsel; yet it could not avail to cleanse of its stain the deed from G?vss to his daughters. I am compelled to believe it fraudulent and void as to creditors. It has all the badges about it. It was voluntary; the consideration expressed is disproved; and it is in full proof, that the grantor made it for the express purpose of avoiding the payment of Claiborne's judgment.
*341 But it was contended, that this was not a case of which equity had jurisdiction, because the judgment of Claiborne was older than the deed, and because it had actually been satisfied by the levy of an elegit. With respect to the elegit, the court from which it issued quashed it; and we are compelled to conclude, properly; because the proceedings of a court having jurisdiction of the matter, cannot be questioned by a side wind. The execution being thus quashed, is as if it had never issued, and leaves the plaintiff free to pursue any remedy which was before open to him. But in the mean time, these deeds have intervened; the deed to the daughters, their deed to Smith, and their deed to Hodges. The case of Eppes v. Randolph, deciding that judgments do not bind lands after twelve months, unless execution be taken out, or an elegit entered on the record,—is considered the law of the land, however it may be doubted by one or two.* This being so, will equity refuse to receive this plaintiff, and assist him in setting these deeds out of his way? I think not. But though these deeds will not be suffered to impede creditors, they are yet good between the parties ; and if by the fair exercise of its powers equity can, instead of cancelling them, make them the means of satisfying the claims of the creditors, I think such an administration will be best suited to its mild spirit. And this 1 believe may be done. The record tells us, that the deed made to secure Smith’s money has been released, that debt being paid. But the deed conveying 150 acres of the land to Hodges is still in force, and he can have no cause of complaint provided his title is secure ; which wili, be effected by satisfying out of his purchase money, the debts due from Gross before he executed the deed to his daughters. He was to give 1050 dollars for the land: he paid the debt to Smith *342 amounting to 271 dollars, and executed his bonds for ° the balance; three bonds for 260 dollars each, payable at distant dates; to secure which he has executed a deed of trust of the land. We hear of but two creditors °f Gross, namely, Claiborne and Wimbish; and the latter, though his appeal has been dismissed here for want of jurisdiction, has a just claim for the amount of his execution, and that claim will be available to him, by means of his ca. sa. under which Gross swore out; for upon that event, the law vested all his property, not pledged to prior liens, in the sheriff, for the benefit of the ca. sa. creditor. And Wimbish (I apprehend) may, under our insolvent law, 1 Rev. Code, ch. 134. § 34. p. 538. proceed by summons to get satisfaction of his debt; or as there may be difficulties in the way of such proceeding, it may be safer to direct, that when this cause goes back (as it must) he be made a party, and entitled to satisfaction after the judgment of Claiborne, prior in time, shall .be satisfied.
It was contended that this judgment of Claiborne's must be taken to have been nearly half discharged, as his elegit had been levied many years before it was quashed. I question much, from the proofs in the record, whether he was ever in possession under it. We know that he did not receive possession from the sheriff, on the dáy the inquest was taken; and we know also, that the lines dividing the half intended for him were never completed, so as to set it out in severalty. This is a point, however, which need not be decided now, but may be inquired into when the cause goes back.
Upon the whole my opinion is that the. decree in Claiborne's case be reversed, and the cause sent back, with directions to make Wimbish and Hodges parties; that an account be taken of the-judgment of Claiborne, charging him with the annual value of the moiety, as settled by the inquest, for such time as he shall have been in actual possession thereof; and that upon Hodges's *343 receiving a good and sufficient title (if he has not alb . b , . . . . , , . : . . ,. , ready received it, for ins deed is not m this record), he be decreed to pay and satisfy out of the purchase money in his hands the judgment of Claiborne, the execution of Wimbish Sec.
Brockenb rough, J. concurred.
Tucker, F.
The first question which presents itself in these cases, is as to the order to consolidate the causes. Whether that order was regular or not, is no otherwise important here, than as it may affect the appeal of Wimbish, whose demand is not sufficient to give jurisdiction if his case stands by itself.
Claiborne and Wimbish are both seeking to set aside the same fraudulent deed, and to charge the same land, and, no doubt, might have united in the same bill for the purpose of recovering their demands. Nothing is more common, or more proper, than the joining of parties as plaintiffs, who have the same common object. It is on this principle that one creditor may institute a suit on behalf of himself and others who may come in, in the course of the cause, and prove their debts and their right to participate in a common fund. Whether, where several suits have already been instituted, they can be consolidated, may however be a different question. I do not distinctly perceive any good reason why those who wight have united in commencing a joint suit, may not afterwards unite their several suits, and consolidate them into a single cause. I recollect no particular instance of the kind, though we are all aware that where there are various demands, which are intimately connected with each other, and seek to charge the same fund, the several causes in which they are asserted are tried together, and one decree is made to embrace them all. Whether regular or not, this has become a common practice with us. But as to consolidating suits in equity, I am indebted to my brother Brooke, for a reference to *344 three recent cases in which the practice is denied and ^ disapproved; Forman v. Blake, 7 Price 654. Forman v. Southwood, 8 Price 572. and Manchester College v. Isherwood, 2 Sim. 479. 2 Cond. Eng. Ca. in Ch. 508. I have examined them, and incline to think they are not parallel’ to the case at bar. The point, however, is not, I conceive, necessary to be decided in this case; for, notwithstanding the order, the cases are severed in the decree. The bills are dismissed respectively, and the parties respectively prayed an appeal. Here, then, is an appeal prayed by Wimbish separately from Claiborne, and so accordingly is it docketed. This appeal cannot be supported, for Wimbish’s demand cannot give jurisdiction to this court. The appeal must therefore be dismissed, but without costs, as improvidently allowed.
As to Claiborne’s case : I think there was no doubt of the justness of his demand; the fraudulent character of the alienation; or the jurisdiction of the court.
1. As to his demand. It is not pretended, that it has been paid. But it is said to have been satisfied by the ¿legit. This cannot be. The elegit having been quashed by a court of competent jurisdiction, the legality and justice of whose acts we cannot thus collaterally question, it must be considered as if it never had existence. My own impression is, that it was properly quashed, as the boundaries of the extended land were not set out so as to enable him to take possession. If, indeed, he has had possession, of which I am not satisfied, an account of the profits he has actually received must be taken, and those profits set off against the demand. -But I do not think he would be properly chargeable with speculative profits on an extent which was void, and has been quashed for uncertainty. His debt then is unsatisfied.
2. As to the fraudulent character of the alienation, that is beyond question. The deed was made for a consideration different from that expressed upon its face, when, in truth and in fact, the principal conside *345 ration was a secret trust for the support of the grantor . 1 1 and ms wife. If this be not void, both at common law and by the statute, I am at a loss to conceive what can J be SO.
3. As to jurisdiction. If Eppes v. Randolph be still considered as good law, then the attempt of Claiborne to extend the land by a second elegii after the first was quashed, would have been arrested by the intervening alienation to Gross’s daughters, unless he can prove it to be fraudulent and void: and to do this,—to remove that deed out of the way,'—he had a right to resort to a court of equity, the two jurisdictions being concurrent as to this matter. And even if the existence of that deed did not of itself furnish a barrier to proceeding at law, the deed of trust to Smith, who is not proved to have had notice, would have been an insuperable one. Admitting that deed to be a good one, and not overreached by the new elegii, Claiborne’s only remedy is in equity, where he may get paid out of the residue of the trust fund, after satisfying Smith. Since the suit brought, indeed, Smith has been paid by Hodges, and now Claiborne is entitled to payment out of the funds in the hands of Hodges, who certainly appears to have no reasonable title to a rescission of his contract. He, however, is no party to Claiborne’s bill. The cause should, therefore, go back for further proceedings. Hodges should be made a party, and Wimbish also, as the insolvency under his cu. sa. gives him a right to such portion of the fund as is necessary to pay his debt, after Claiborne is satisfied, he having the preference according to the case of Fox v. Rootes, 4 Leigh 429.
In Wimbish’s case, appeal dismissed.
In Claiborne’s case, decree reversed, and cause remanded for further proceedings, with directions that Wimbish and Hodges shall be made parties defendants &c.

Note by reporter. See Coleman v. Cocke, 6 Rand. 618. 629-635. U. States r. Morrison, 4 Peters 124.